UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WOUDSTRA,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.

                                               Case No. 1:16-cv-1211

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 49 years of age on his alleged disability onset date. (PageID.164). He successfully completed high school and previously worked as a carpet cleaner, manager, programmer, and manufacturing representative. (PageID.47-48). Plaintiff applied for benefits on June 19, 2014, alleging that he had been disabled since July 13, 2012, due to degenerative disc disease, drop foot, arthritis, pinched nerve, depression, stomach ulcers, headaches, numbness in his extremities, and reflex impairment. (PageID.164-65, 186). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.101-62).

On August 13, 2015, Plaintiff appeared before ALJ Donna Grit with testimony being offered by Plaintiff and a vocational expert. (PageID.55-99). In a written decision dated September 14, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. (PageID.40-49). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.21-25). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2013. (PageID.42). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v.*

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from: (1) hypertension and (2) cervical and lumbar degenerative changes, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.42-44). With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he cannot climb ladders, ropes, or scaffolds; (2) he can frequently stoop, crouch, balance, kneel, and crawl; and (3) he can frequently perform handling and fingering activities. (PageID.44).

The ALJ found that through the date Plaintiff was last insured he was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his

limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed more than one million jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.92-95). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff were limited to sedentary work, with the same additional limitations, there still existed more than one-half million jobs in the national economy which Plaintiff could perform consistent with his RFC. (PageID.95-97). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.   **The ALJ Properly Considered the Evidence**

As noted above, Plaintiff's insured status expired on March 31, 2013. An examination conducted on June 14, 2013, revealed that Plaintiff was experiencing right foot drop. (PageID.280-85). An MRI of Plaintiff's lumbar spine, performed on August 11, 2013, revealed "advanced degenerative disease at the lumbosacral level." (PageID.290-91). Plaintiff asserts that he is entitled to relief because the ALJ failed to properly consider this evidence.

As the Sixth Circuit has recognized, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Security Administration*, 88 Fed. Appx. 841, 845 (6th Cir., Feb. 3, 2004). Nevertheless, "[m]edical evidence of a condition recognized after an insured period may establish the existence of the same condition during an earlier insured period if the temporal relation is reasonably proximate and supported by

corroborative evidence arising during the insured period." *DeVoll v. Commissioner of Social Security*, 2000 WL 1529803 at *4 (6th Cir., Oct. 6, 2000) (citing *Begley v. Mathews,* 544 F.2d 1345, 1354 (6th Cir.1976)); *see also*, *Anderson v. Commissioner of Social Security*, 440 F.Supp.2d 696, 699-700 (E.D. Mich. 2006) ("medical evidence that postdates the insured status date may be, and ought to be, considered, insofar as it bears on the claimant's condition prior to the expiration of insured status") (citing *Begley*, 544 F.2d at 1354).

Contrary to Plaintiff's argument, the ALJ did address Plaintiff's assertion that he experienced foot drop. Specifically, the ALJ stated:

> Finally, the claimant testified that prior to the date last insured he suffered from foot drop. The objective evidence, however, is completely absent any mention of such a condition until after the date last insured (Ex 4F/2). Because of this lack of documentation prior to the date last insured, there is insufficient clinical laboratory or diagnostic findings to support a diagnosis. Based on the Regulations, there must be objective supporting evidence to establish the existence of a medical condition. Thus, contrary to the claimant's testimony, there is no medically determinable impairment of foot drop during the period at issue.

(PageID.44).

While Plaintiff asserts that he was experiencing foot drop prior to the expiration of his insured status, he has identified no medical evidence documenting (or even suggesting) that such was the case. While the June 14, 2013 observation that Plaintiff was experiencing foot drop is not irrelevant, to conclude that Plaintiff was experiencing foot drop prior to the expiration of his insured status there must exist medical evidence, which predates the expiration of Plaintiff's insured status, confirming or supporting such. *DeVoll*, 2000 WL 1529803 at *4. Plaintiff has failed to identify any such evidence.

As for Plaintiff's argument that the ALJ failed to properly assess the results of the

aforementioned August 2013 MRI examination, the result is the same. The MRI in question, performed more than four months after the expiration of Plaintiff's insured status, revealed "advanced degenerative disease at the lumbosacral level." (PageID.290-91). The ALJ specifically acknowledged the results of this examination:

> In August 2013, an MRI of [Plaintiff's] lumbar spine showed degenerative disc disease (Ex 2F/29-30). Even though this finding was after the date last insured, it is reasonable to conclude that this problem pre-dated the date last insured. Additionally, the record is absent evidence of an acute injury to the low back that occurred after the date last insured.
>
> Nevertheless, it must be reiterated that despite the existence of a lumbar condition, the objective evidence prior to August 2013 is completely absent. The claimant reported low back pain in April of 2010, but noted he had more upper than lower back pain, was using Norco once a day, and on exam he had some neck discomfort with flexion and extension. (Exhibit 6F/9). Therefore, the lumbar spine is accommodated in the given residual functional capacity. However, given his repeated admissions of having no treatment, there is no evidence substantiating the level of impairment to which he alleged in his testimony.

(PageID.45).

Again, contrary to Plaintiff's argument, the ALJ did not ignore or misinterpret the results of his August 2013 MRI examination. Rather, the ALJ accurately noted that there existed no medical evidence, prior to the expiration of Plaintiff's insured status, suggesting that Plaintiff's lumbar spine impairment was of similar severity prior to the expiration of his insured status. Almost all of the medical evidence submitted in this case post-dates the expiration of Plaintiff's insured status. The scant amount of evidence which predates the expiration of Plaintiff's insured status supports and is consistent with the ALJ's RFC assessment. (PageID.260, 343-58). In sum, the ALJ's assessment of the evidence in question is supported by substantial evidence.

**II.         The ALJ Properly Evaluated the Opinion Evidence**

On August 5, 2015, more two years after the expiration of Plaintiff's insured status, Dr. Jocelyn Pouliot completed a form report regarding Plaintiff's ability to perform work-related activities. (PageID.480-81). Dr. Pouliot reported that Plaintiff was more limited than the ALJ ultimately concluded. The ALJ afforded "little weight" to Dr. Pouliot's opinion. (PageID.46). Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to articulate sufficient reasons for discounting the opinion of his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*,

839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

Dr. Pouliot reported that Plaintiff could occasionally lift 10 pounds and frequently

lift less than 10 pounds. (PageID.480). The doctor reported that during an 8-hour workday Plaintiff could sit and stand/walk for less than two hours each. (PageID.480). The doctor also reported that Plaintiff required a sit-stand option. (PageID.480). Dr. Pouliot reported that Plaintiff was limited to this extent "since at least" the date his insured status expired. (PageID.480).

The ALJ articulated multiple reasons for discounting Dr. Pouliot's opinion, all of which are supported by substantial evidence. As the ALJ noted, Dr. Pouliot did not first examine Plaintiff until several months after his insured status expired. (PageID.46, 280-85). Nevertheless, the doctor asserted that the limitations she identified existed "since at least" the date Plaintiff's insured status expired. (PageID.480). The doctor offered no rationale to support her opinion regarding Plaintiff's alleged limitations prior to the date she first examined Plaintiff. Moreover, as the ALJ recognized, the medical evidence prior to the expiration of Plaintiff's insured status neither supports the doctor's opinion nor supports the argument that the limitations Plaintiff may have experienced following the expiration of his insured status were present to the same or similar degree prior to the expiration of his insured status. The ALJ also correctly observed that Dr. Pouliot expressly stated that her opinion was based upon a hip injury which Plaintiff did not suffer until July 1, 2014, more than one year after the expiration of his insured status. (PageID.360, 480). In sum, the ALJ articulated sufficient reasons for discounting Dr. Pouliot's opinion.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  July 19, 2017                                          /s/ Ellen S. Carmody
                                                              ELLEN S. CARMODY
                                                              United States Magistrate Judge